# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| MOHAMMED BAH, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | Case No. CV615-002 |
| UNITED STATES OF AMERICA, | ) ) | (underlying CR613-010) |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Mohammed Bah, proceeding *pro se*, moves under 28 U.S.C. § 2255 for a reduction in his sentence. He claims that his attorney's ineffectiveness resulted in an illegally enhanced sentence. Doc. 34.[1] The government opposes. Doc. 42. Because the Court properly applied the contested sentencing enhancement, Bah's counsel performed competently and his motion should be denied.

## I. BACKGROUND

On March 11, 2013, Bah went to a Swainsboro, Georgia Wal-Mart and tried to purchase electronics with fake gift cards imprinted with

---

[1] All citations are to the criminal docket and page numbers are those assigned by the Court's docketing software.

stolen credit card numbers. Doc. 38 at 39; Pre-sentence Investigation Report ("PSI") ¶ 4.[2] He acted suspiciously and ultimately was arrested. Doc. 38 at 39. In his car in the Wal-Mart parking lot, police found two computers containing 53 stolen card numbers, a stack of blank cards, and a machine to imprint the numbers on the blanks. PSI ¶ 6. At the time of his arrest, he had used eighteen of the 53 numbers to make $15,521.25 in purchases. *Id.*

Bah pled guilty to possession of fifteen or more unauthorized credit card access devices pursuant to a plea agreement with the government. Docs. 28, 32. The PSI set a base offense level of 6 under the Sentencing Guidelines. PSI ¶ 18. The amount of intended loss -- calculated at $383,318.19 based on the total credit limit for the 53 card numbers in Bah's possession at the time of his arrest -- increased that by twelve more levels. *Id.* at ¶¶ 6-9, 19. With other modifications, the PSI calculated his total offense level to be 22. *Id.* at ¶ 55.

Bah did not object in writing to the facts or Guidelines calculations in the PSI. *See* PSI Addendum ("The defendant has no objections to the

---

[2] The Court culls the background facts from the PSI because it provides the most comprehensive view of what transpired and because Bah never objected to the PSI's factual content (or its application of the Sentencing Guidelines), either at his sentencing hearing, *see* doc. 41, or in the PSI's Addendum.

2

[PSI]."); doc. 41 (transcript of sentencing hearing). The sentencing judge nevertheless asked whether Bah had any "disagreement or objection" to the PSI; Bah replied "No, sir." Doc. 41 at 6. The district judge adopted the PSI as written and sentenced Bah to 55 months' imprisonment. *Id.* at 6, 14. Consistent with the appeal waiver in his plea agreement, Bah did not appeal.[3] Bah timely filed the present motion on January 12, 2015. Doc. 34.

## II. ANALYSIS

Bah complains that his counsel provided ineffective assistance by failing to file timely written objections to the PSI, failing "to cite case law in defense," and failing "to preserve or perfect" the loss calculation issue for appeal. Doc. 34 at 4. To address that argument, however, the Court first must look at his second claim -- that the district court plainly erred in calculating the intended loss enhancement because Bah only used eighteen of the 53 card numbers found on his computer, *id.* at 5; doc. 43 at 2-4, for if it fails, then so too does claim one.

---

[3] The plea agreement also contained a collateral attack waiver barring, among other things, § 2255 motions. *See* doc. 32 at 4-5. The government declines to rely on the waiver since the plea colloquy arguably focused solely on Bah's direct appeal waiver. *See* doc. 6 at 2 n. 2.

3

A.  **Intended Loss Enhancement**

The Sentencing Guidelines recommend enhancing sentences in fraud cases based on the amount of loss, which they define as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1) & cmt. 3(A). "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur. . . ." *Id.* at cmt. 3(A)(ii). In cases like this, involving stolen credit cards, the credit limit of the stolen cards may be used to calculate the intended loss absent clear evidence that a defendant intended to steal only a lesser amount. *See United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001) ("[O]nce a defendant has gained access to a certain credit line . . . a district court does not err in determining the amount of the intended loss as the total line of credit to which Defendant could have access, especially when Defendant presents no evidence that he did not intend to utilize all of the credit available on the cards."); *see also United States v. Oates*, 122 F.3d 222, 226 n. 5 (5th Cir. 1997) (fraudulent endorsement of a financial instrument demonstrates intent to gain access to the funds it represents

4

and it is the "access to funds [that] is dispositive" in determining the amount of intended loss).

The only evidence presented at sentencing here showed that Bah intended to use all the stolen card numbers to their respective limits. When he was arrested at Wal-Mart, Bah's car -- which was in the Wal-Mart parking lot -- contained two computers with 53 card numbers, blank credit cards, and a machine that could imprint numbers on those cards. PSI ¶ 5, 7. Those items, and their proximity to Bah as he actually used the stolen card information to make illegal purchases, show ready access to all 53 cards and thus an intent to use them to the extent of their credit limits. *See Nosrati-Shamloo*, 255 F.3d at 1292 (defendant stole mail and applied for credit cards using the stolen information; court properly calculated intended loss as the total available credit on the stolen cards, even though government introduced no evidence showing that defendant maxed out any given card). By contrast, no evidence exists (because Bah introduced no evidence to the contrary) suggesting that Bah intended to use less than the full amount on each card. *See id.* at 1291.

Bah argues that he can only be held responsible for the eighteen cards he actually used and the $15,521.25 in charges he actually made. *See* doc. 7 at 4 ("The government provided a list of 53 individuals that were victims but . . . only 18 victims actually suffered losses."). But that ignores § 2B1.1(b)(1)'s clear message that "loss" in this context means "the greater of actual loss *or* intended loss." *Id.* at cmt. 3(A) (emphasis added); *see also Nosrati-Shamloo*, 255 F.3d at 1291 ("If the intended loss due to the offense is greater than the loss actually caused, the court may use the amount of the intended loss for sentencing purposes."); *United States v. Pemberton*, 479 F. App'x 264, 269-70 (11th Cir. 2012) (district court did "not err in determining the amount of the intended loss as the total line of credit to which [the d]efendant could have access"). Calculating the enhancement based on intended loss instead of the loss Bah actually caused thus did not violate § 2B1.1(b)(1).

Bah also asserts that there was "no evidence that defendant intended to cause the amount of loss provided in the [PSI]." Doc. 35 at 3. That's just not true, if for no other reason than Bah possessed the stolen card numbers and presented no evidence suggesting he intended to use them for less than their full credit limits. *See Nosrati-Shamloo*, 255 F.3d

at 1292; *Pemberton*, 479 F. App'x at 269-70 (intended loss properly calculated as credit limits of two fraudulently obtained cards simply because defendant had access to the cards). Bah not only possessed the card numbers, but his car, parked right outside the store where he used the fake gift cards, also had in it blank cards and a machine to imprint the numbers on the blanks. PSI ¶ 5. Again, mere possession of the stolen numbers -- much less in such close proximity to Bah's commission of a crime using some of the numbers and with the physical ability to create more fake cards using the others -- is evidence that he intended to max out the cards. *See United States v. Edmondson*, 349 F. App'x 511, 516-17 (11th Cir. 2009) (calculating intended loss using total line of credit acceptable "when the actual charges made against the cards were less, the evidence was circumstantial and unclear about whether defendant knew the actual credit limits on the cards, and when no evidence shows that Defendant's intent was something other than to make use of the full line of credit"); *United States v. Stetson*, 202 F. App'x 449, 451 (11th Cir. 2006) (same).[4] Absent contrary evidence

---

[4] Bah also obliquely suggests that, because he made factual objections to the PSI and its enhancement recommendation, the government failed to satisfy its burden to put forward "sufficient and reliable evidence to prove the necessary facts." *See* doc. 2 at 5 ("When the government seeks to apply enhancements . . . over a defendant's factual

7

(which Bah has never presented), and given that Bah made no objection to the PSI until this § 2255 motion, his twelve level intended loss enhancement was proper.[5]

---

objections, it has the burden of introducing . . . evidence to prove the necessary facts. . . ."). But as the sentencing hearing transcript, not to mention the PSI Addendum, reflects, Bah never objected to any aspect of the PSI. Regardless, as noted above the government put forth sufficient evidence to show that Bah intended to max out the 53 stolen cards in his possession.

The cases Bah cites are not to the contrary. In *United States v. Lopez*, the defendant, unlike Bah, objected to the PSI's loss calculation and asserted that he should only be held responsible for the stolen cards in his possession at the time of arrest rather than card numbers found on a co-defendants computer. 549 F. App'x 909, 912-13 (11th Cir. 2013). Because the government offered no evidence tying Lopez to the co-defendant's cards, the court sustained the objection and vacated the intended loss enhancement. *Id.* Here, by contrast, not only did Bah fail to object, but, unlike Lopez, he possessed all 53 cards at the time of his arrest. PSI ¶ 5-8.

*United States v. Diallo*, a case with an arrest scenario remarkably similar to Bah's (just substitute Wegman's for Wal-Mart), reversed an intended loss calculation based on the total credit limit of all cards in the defendant's possession, but only because the district court, in the face of defendant's objection, made no factual findings as to whether he intended to use the total credit limit of the stolen cards. 710 F.3d 147, 152-53 (3d Cir. 2013). *Diallo* did not, however, hold that the facts alleged would not support the intended loss enhancement. Instead, it held only that when faced with a defendant's objection and evidence to the contrary, the government had to come forward with some proof of defendant's intent beyond mere possession of stolen card numbers. *Nosrati-Shamloo* implies the same. *See* 255 F.3d at 1291 (intended loss enhancements based on total credit limit not erroneous where "defendant presents no evidence that he did not intend to utilize all of the credit available on the cards").

[5] Even if the argument had legs, Bah procedurally defaulted it by not raising it on direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (movants under § 2255 "generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [are] barred from presenting the claim in a § 2255 proceeding"); *Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). Nevertheless, the Court addresses the merits of the argument because it plays into the success or failure of Bah's ineffective assistance claim.

## B. Ineffective Assistance of Counsel (IAC)

Bah also claims that his attorney provided ineffective assistance by not objecting to the intended loss enhancement. To prevail on that claim he must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To satisfy the deficient-performance prong, Bah must show that his attorney made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687.

Failing to make meritless arguments, like the one Bah makes about his intended loss enhancement, cannot be deficient performance. Again, *Strickland* requires that counsel make an *error* (and a serious one at that).[6] *Id.* at 687. As discussed above, however, the intended loss calculation argument Bah makes had no chance of success. Counsel's "failure" to make that losing argument could not have been error and thus was not deficient performance.

---

[6] "Error," both in everyday parlance, and in the context of an IAC claim, means "an act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/error (last visited August 21, 2015).

9

Moreover, as the government correctly notes (doc. 42 at 8), Bah offers no evidence that his attorney should have marshalled demonstrating that he intended to steal less than the full credit limits from the 53 stolen cards in his possession. The burden to put forward such proof was Bah's, not the government's. *See Edmondson*, 349 F. App'x at 517 ("Under *Nosrati-Shamloo*, it was Edmondson's burden to present some other type of evidence 'that tended to show that [s]he did not intend to use all of the credit available on the cards. . . . Because she failed to present any such evidence, the district court did not clearly err in its intended loss calculation."). In the absence of that evidence Bah's counsel could not deficiently perform by refusing to make a baseless intended loss calculation argument.[7]

---

[7] Needless to say, Bah also suffered no prejudice from counsel's failure. Meritless arguments by definition have no chance of success. Hence, no reasonable probability exists that, but for counsel's failure to make an intended loss calculation argument, "the result of the proceeding would be different." *Strickland*, 466 U.S. at 694; *see also United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (defense counsel "was not ineffective in failing to recognize this issue, as a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

## III. CONCLUSION

Bah's § 2255 motion (doc. 34) should be **DENIED**.[8] Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 27th day of August, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[8] Furthermore, Bah is not entitled to an evidentiary hearing since the record shows that under no circumstances is he entitled to relief. *See Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) ("[D]istrict court[s are] not required to grant a petitioner an evidentiary hearing if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).").